# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **EDEKKA LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 2:15-cv-541-JRG** |
| **v.** | **LEAD CASE** |
| **3BALLS.COM, INC.,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**PLAINTIFF EDEKKA'S RESPONSE IN OPPOSITION
TO ACTION ENVELOPE & PRINTING CO., INC., ALDO U.S. INC., AM RETAIL
GROUP INC. D/B/A WILSON'S LEATHER, ASICS AMERICA CORPORATION, BEBE
STUDIO, INC., AND CYMAX STORES USA, LLC'S
<u>SECTION 101 MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

PROCEDURAL BACKGROUND .........................................................................................2

ARGUMENT AND AUTHORITIES ......................................................................................3

    A.  The Legal Standards on Rule 12(b)(6) Motions to Dismiss
Demonstrate that Section 101 Dismissals Are the Exception, Not the
Rule, and that Dismissal Cannot Be Granted If There Are
Underlying Fact Issues or Claim Construction Issues. ...............................................3

    B. The Defendants Failed to Obtain Leave of Court before Filing
Their Motions................................................................................................................6

    C.  *Alice* Demonstrates that Section 101 Dismissal Cannot Be
Granted if the Claims at Issue Do Not Comprise an "Abstract Idea"
or if They Contain "Additional Features" or "Meaningful
Limitations." ................................................................................................................7

    D.  The Section 101 Motions to Dismiss Should Be Denied Because
the Claims of the '674 Patent are Subject Matter Eligible Under
*Alice*................................................................................................................................8

    E.  In the Alternative, the Section 101 Motions to Dismiss Should
Be Denied Because There are Fact Issues and Claim Construction
Issues that Defeat the Motions. .................................................................................17

CONCLUSION ....................................................................................................................19

## Cases

*Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ...................................................................................6

*Bilski v. Kappos*, 561 U.S. 593, 599 (2010) ...................................................11

*Cal. Inst. of Tech. v. Hughes Communs., Inc.*, 59 F. Supp. 3d 974, 984 (C.D. Cal. Nov. 3, 2014) ...................................................................................11

*Certified Measurement, LLC v. Centerpoint Energy Hous. Elec. LLC*, 2015 U.S. Dist. LEXIS 39821, * 4 (E.D. Tex. Mar. 30, 2015) ...................5

*CLS Bank Int'l v. Alice Corp.*, 134 S.Ct. 2347 (2014) .......................4, 7, 8, 11

*CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013) ...................................................................................................................4

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) ...................................................................................11

*Dietgoal Innovations LLC v. Tyson Foods, Inc.*, Case No. 2:12-cv-338, Dkt. No. 59 (E.D. Tex. Mar. 25, 2013) ...................................................5

*Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) ...............................................3

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) .........3, 15

*Macrosolve, Inc. v. Geico Ins. Agen., Inc.*, Case No. 6:12-cv-74-MHS-JDL (E.D. Tex. Feb. 5, 2013) ...................................................................5

*Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. 1289 (2012) ...................................................................................7, 11

*Microsoft Corp. v. i4i P'ship*, 131 S. Ct. 2238, 2242 (2011) .............................4

2010 U.S. Dist. LEXIS 120225, at *16 (N.D. Ohio Nov. 12, 2010) ...........................................5

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*,

2014 WL 1998053 at *4 (E.D. Tex. May 15, 2014) ............................................................4, 5, 8

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*,

Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014).....................................4, 8, 12, 14

*Stoneeagle Servs., Inc. v. Davis*, Case No. 3:13-cv-894 (N.D. Tex.

Aug. 14, 2013) .......................................................................................................................5

*TQP Development, LLC v. Intuit Inc.*, Case No. 2:12cv-180, Dkt. No.

150 (E.D. Tex. Feb. 19, 2014).........................................................................................8, 12

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013)

.......................................................................................................................... passim

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1342 (Fed. Cir. 2013)

.......................................................................................................................................4

*WildTangent, Inc. v. Ultramercial, LLC*, 134 S.Ct. 2870 (U.S. June 30,

2014) ......................................................................................................................................3

**Statutes**

35 U.S.C. § 282(a) ...............................................................................................................4

35 U.S.C. §101 ...............................................................................................................7, 10

Plaintiff eDekka LLC ("eDekka") hereby files this Response in Opposition to the pending Motions to Dismiss for Failure to State a Claim, filed by Defendants Action Envelope & Printing Co., Inc. (2:15-cv-543, Dkt. No. 8), Aldo U.S. Inc. (2:15-cv-554, Dkt. No. 8), AM Retail Group Inc. d/b/a Wilson's Leather (2:15-cv-556, Dkt. No. 8), Asics America Corporation (2:15-cv-559, Dkt. No. 8), Bebe Studio, Inc. (2:15-cv-553, Dkt. No. 8), and Cymax Stores USA, LLC (2:15-cv-545, Dkt. No. 8), (collectively "the Action Defendants") and in support thereof respectfully shows the Court as follows:

## INTRODUCTION

The defendants contend that this case should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, on the grounds that the patent-in-suit, U.S. Patent No. 6,266,674 (the "'674 Patent") is invalid because it preempts the "abstract idea" of "storing and labeling information.  In their motions, however, the defendants fail to meet their burden to show that the only plausible reading of the claims of the '674 Patent must be that there is clear and convincing evidence of ineligibility.  The defendants do not undertake any meaningful claim by claim analysis of the limitations of the '674 Patent, they do not show by clear and convincing evidence the absence of factual issues, and they sweep away the substantial likelihood of claim construction issues with a wave of the hand.

This response demonstrates that the '674 Patent is a patent-eligible application, not an unpatentable "abstract idea," and that the claims of the '674 Patent contain "additional features" and "meaningful limitations" that show that all claims of the '674 Patent are subject matter eligible.  In addition, this response demonstrates the presence of relevant and material fact issues and claim construction issues that preclude the granting of a Rule 12 motion on this issue.

Defendants, on the other hand, fail to analyze the claims of the '674 Patent using all the ordinary tools of claim construction, and in fact, provide no construction whatsoever. Defendants say nothing about the specification, the preferred embodiments, or any of the traditional factors that underscore, concretely, what the claims cover.  Defendants provide precious little detail or analysis of the individual claims.  Instead, the defendants elected to adopt a wholly superficial approach that construes everything in the defendants' favor, ignoring their heavy burden at this stage of the case.

If the defendants truly wished to show that all claims of the '674 Patent fail under § 101, they would have had to exclude *any* plausible construction of each claim that survives § 101, while identifying an undeniable abstract idea at the right level of generality.  Defendants' insubstantial effort to grapple with the claims' true meanings and the current posture suggest that they are more serious about subjecting eDekka and the Court to unnecessary effort and potentially exposing early infringement and claim construction positions.  The defendants cannot properly seek to invalidate the '674 Patent before its technical limitations are clear.

In sum, the defendants have not demonstrated that the only plausible reading of the '674 Patent is that there is clear and convincing evidence that the '674 Patent is subject matter ineligible.  The defendants' motions to dismiss should be denied.

## PROCEDURAL BACKGROUND

eDekka has filed a number of related cases based on the '674 Patent.  Generally, the accused instrumentality for each defendant comprises the shopping cart functionality on an ecommerce website used for retail sales directly to consumers, and the servers and other equipment providing that functionality.

On April 24, 2015, eDekka filed an initial group of 20 cases.  This group has been consolidated under *eDekka v. 3balls.com, Inc.*, Case No. 2:15-cv-541.  Defendants Action Envelope & Printing Co., Inc., Aldo U.S. Inc., AM Retail Group Inc. d/b/a Wilson's Leather, Asics America Corporation, Bebe Studio, Inc., and Cymax Stores USA, LLC are part of the group consolidated under *3balls.com.*  These defendants share counsel and have filed identical motions.  Three other defendants consolidated under *3balls.com* have also filed motions to dismiss, Balsam Hill LLC (2:15-cv-555), Cole Haan LLC (2:15-cv-541), and Columbia Sportswear Company (2:15-cv-547).  eDekka will address these three defendants' motions separately because their respective motions contain different arguments.

## ARGUMENT AND AUTHORITIES

**A.  The Legal Standards on Rule 12(b)(6) Motions to Dismiss Demonstrate that Section 101 Dismissals Are the Exception, Not the Rule, and that Dismissal Cannot Be Granted If There Are Underlying Fact Issues or Claim Construction Issues.**

On a 12(b)(6) Motion, the Court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007).  Although whether a patent claim covers patent-eligible subject matter under 35 U.S.C. §101 is a question of law, "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter[,] because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013), *vacated on other grounds sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S.Ct. 2870 (U.S. June 30, 2014)

(reversing district court's dismissal of plaintiff's patent claims based on lack of subject matter eligibility) (citing *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013), *aff'd in CLS Bank Int'l v. Alice Corp.*, 134 S.Ct. 2347 (2014)).  "This is so because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Id.*  For the Section 101 Motions to Dismiss to be granted, the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Id.* (emphasis in original); *accord*, *Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 1998053 at *4 (E.D. Tex. May 15, 2014) (Gilstrap, J.); *analysis re-confirmed post-Alice in Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014) (Gilstrap, J.).

A patent that has been examined and issued by the USPTO is presumed to be valid. 35 U.S.C. § 282.  This presumption applies in a section 101 analysis. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1342 (Fed. Cir. 2013).  "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a).  The burden of proof to invalidate a patent in federal courts is clear and convincing evidence. *See Microsoft Corp. v. i4i P'ship*, 131 S. Ct. 2238, 2242 (2011).

The Federal Circuit has cautioned that the analysis under Section 101, while ultimately a legal determination, is rife with underlying factual issues.[1]  For example, any inquiry into the scope of preemption – how much of the field is "tied up" by the claim – by definition will involve historic facts: identifying the "field," the available alternatives, and preemptive impact of the claims in that field.  *Ultramercial*, 722 F.3d at 1339.  The Court concluded that "[t]he

---

[1] To help identify the factual issues at hand in, eDekka includes a Declaration from Robert Sherwood, an expert on computer devices, software applications, and internet advertising. eDekka requests the Court consider the statements in Mr. Sherwood's declaration.

presence of factual issues coupled with the requirement for clear and convincing evidence normally will render dismissal under Rule 12(b)(6) improper." *Id; accord Certified Measurement, LLC v. Centerpoint Energy Hous. Elec. LLC*, 2015 U.S. Dist. LEXIS 39821, * 4 (E.D. Tex. Mar. 30, 2015) ("The need for claim construction is especially apparent here, where Defendants' invalidity argument is implicitly premised on its conclusions about the meanings of certain claim terms.").

Moreover, the Federal Circuit has held that, "in part because of the factual issues involved, claim construction normally will be required" before a court can make a determination of subject matter eligibility under Section 101. *Ultramercial, 722 F.3d at 1339.; accord Rockstar*, 2014 WL 1998053 at *3 ("If there are factual disputes about the patent's claims, however, the question of patentable subject matter should be reserved until claim construction."); *see also Dietgoal Innovations LLC v. Tyson Foods, Inc.*, Case No. 2:12-cv-338, Dkt. No. 59 (E.D. Tex. Mar. 25, 2013) (Gilstrap, J.) (denying defendant's motion to dismiss for failure to state a claim based on unpatentable subject matter).

Other courts have reached the same conclusion. *See, e.g.*, *Macrosolve, Inc. v. Geico Ins. Agen., Inc.*, Case No. 6:12-cv-74-MHS-JDL (E.D. Tex. Feb. 5, 2013) ("Here, where the claims of unpatentabilty relate directly to the scope and meaning of a claim term, it is not only prudent, but necessary for the Court to conduct claim construction prior to determining the patentability of the subject matter under 35 U.S.C § 101."); *Stoneeagle Servs., Inc. v. Davis*, Case No. 3:13-cv-894 (N.D. Tex. Aug. 14, 2013) (Dkt. No. 15) ("[C]laim construction will sharpen these issues and offer more than two opposing takes on what the claims mean.  A ruling based on briefing alone without evidence invites pure guesswork. . . . As such, the Court exercises restraint over valor."); *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, Case No. 1:10-cv-1370, 2010 U.S. Dist.

LEXIS 120225, at *16 (N.D. Ohio Nov. 12, 2010) ("Because the record is inadequate, the Court will not address defendants' specific arguments as to whether the patent meets the machine-or-transformation test or claims an abstract idea.  Accordingly, defendants' motion to dismiss must be denied."); *see also Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.").

For all of these reasons, despite the fact that defendants have cited several cases satisfying the exception, the fundamental premise is that "Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule."   *Ultramercial*, 722 F.3d at 1339.

## B. The Defendants Failed to Obtain Leave of Court before Filing Their Motions

The Marshall Division of the Eastern District of Texas has adopted a new procedure in its Docket Control Orders for patent cases.  Parties seeking to file dispositive motions under section 101 before the Court's Claim Construction Order must obtain leave from the Court by showing good cause.[2]  The Sample Docket Control Order requires parties to use the letter briefing process. Through this process, the movant must demonstrate good cause prior to filing its motion.  The non-movant is then given an opportunity to respond.  This case will eventually be governed by a Docket Control Order with such a provision.[3]  Defendant has not obtained Court permission, nor has it shown good cause to file a section 101 motion.  This motion should be dismissed for failure to obtain leave of the Court.

---

[2] A sample docket control order is available at http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22244.
[3] The parties have been ordered to submit a Docket Control Order. (*See* 2:15-cv-541-JRG, Dkt. No. 17).

**C.  *Alice* Demonstrates that Section 101 Dismissal Cannot Be Granted if the Claims at Issue Do Not Comprise an "Abstract Idea" or if They Contain "Additional Features" or "Meaningful Limitations."**

Under the recent *Alice* decision, a determination of subject matter eligibility under Section 101 involves a threshold issue, and then a two-step process.

At the threshold, the court looks to whether the claims of the patent fall within the categories of subject matter eligible for patent protection under Section 101.  Section 101 provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101; quoted in *Alice*, 134 S.Ct. at 2354.

If the threshold question is satisfied, the analysis turns to a two-step process, to determine whether the patent and claims at issue are patent-ineligible concepts – that is, laws of nature, natural phenomena, or abstract ideas – or whether they are patent-eligible applications of those concepts.  *Alice*, 134 S.Ct. at 2355 (citing *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. 1289 (2012)).

First, the court determines whether the claims at issue are directed to one of those patent-ineligible concepts.  *Id.*  Here, as the defendants suggest in their motions, the only patent-ineligible concept potentially implicated would be that the claims of the '674 Patent comprise merely an "abstract idea."  *See* the Action Defendants' Motion at 7.  This Court has identified that in some cases, it can determine from the face of the claims that they are "inherently limited to the sphere of application rather than abstraction," that they "require[] a physical act in the world," and that they "articulate[] a bounded universe of applications for the claimed process."

- 7 -

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 1998053 at *4 (E.D. Tex. May 15, 2014) (Gilstrap, J.); *analysis re-confirmed post-Alice in* Case *Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014) (Gilstrap, J.).

   If the court determines that the patent claims comprise merely an "abstract idea," the court then asks, "what else is there in the claims before us?" *Alice*, 134 S.Ct. at 2355.  To answer that question, the court considers the elements of each claim to determine whether the additional elements transform the claim into a patent-eligible application.  *Id.*  The Court in *Alice* described this as a search for an "inventive concept" and looks to whether the claim includes "additional features" beyond the "abstract idea."  *Id.* at 2355, 2357.  This Court has articulated that this analysis includes whether the claims at issue contain "meaningful limitations."  *See Rockstar*, 2014 WL 1998053 at *4; *accord TQP Development, LLC v. Intuit Inc.*, Case No. 2:12cv-180, Dkt. No. 150 (E.D. Tex. Feb. 19, 2014) (Bryson, J., by designation) (claims directed to the fundamental concept of an unpatentable abstract idea regain patent eligibility if the claim contains additional limitations on the scope of the invention's basic concept).

**D.  The Section 101 Motions to Dismiss Should Be Denied Because the Claims of the '674 Patent are Subject Matter Eligible Under *Alice*.**

   The '674 Patent is entitled "Random Access Information Retrieval Utilizing User Defined Labels."  *See* Exhibit A ('674 Patent).  The application was filed in March 1992, and the '674 Patent issued in July 2001.  The '674 Patent contains 52 claims.  Claims 1 through 16 are method claims, and Claims 17 through 52 are apparatus claims.

   In these cases, eDekka asserts that the "shopping cart" functionality of certain ecommerce websites, and the defendants' systems that provide this functionality, infringe the

- 8 -

'674 Patent.  In its Complaints, eDekka identified Claims 1 and 3 as examples of infringed

claims.  eDekka's P.R. 3-1 and 3-2 disclosures to the moving defendants are due in a few weeks,

and at this time (without prejudice) eDekka expects that it will assert Claims 1, 3, 5, 13, 15, 17,

18, 19, 35, 36, 37, and 42 in its infringement contentions.

The claims of the '674 Patent contain meaningful limitations.  By way of example, Claim

5 of the '674 Patent, which is an independent method claim, reads as follows:

> 5.      Method of storing information provided by a user which comprises:
> *__in response to user input__*, receiving and storing *__first__* and *__second information__*;
> in response to user input, *__designating the first information as data__* *__while the__* *__first__* *__information is being received__*;
> in response to user input, *__designating the second information as a label__* *__while__* *__the second information is being received__*;
> in response to user input, *__traversing a data structure__* and *__providing an__*
> *__indication__* *__of a location in the data structure__*; in response to user input, storing
> the label at the location in the data structure; and
> associating the label with the data.

*See* Exhibit A (emphasis added, to indicate claim terms that comprise "additional features" and

"meaningful limitations" and/or to demonstrate areas where eDekka suspects that defendants

will raise claim construction issues).

Claim 17, which is an independent apparatus claim, reads:

> 17.      Apparatus for storing information provided by a user which comprises:
> *__info input means__*, *__in response to user input__*, for receiving and storing
> information;
> *__data means__*, in response to user input, for *__designating the information as data__*
> *__while the information is being received__*;
> *__label means__*, in response to user input, for *__designating at least a portion of the__*
> *__information as a label__* *__while the information is being received__*;
> *__search means__*, in response to user input, for *__traversing a data structure__* and
> *__providing an indication of a location in the data structure__*;
> *__means__*, in response to user input, for storing the label at the location in the data
> structure; and
> *__associating means__*, in response to user input, for associating the label with the
> data.

*See* Exhibit A (emphasis added, to indicate claim terms that comprise "additional features" and "meaningful limitations" and/or to demonstrate areas where eDekka suspects that defendants will raise claim construction issues).

Claim 37, which is a dependent apparatus claim depending from Claims 35 and 36, reads in full:

> 37. [Inherited from Claim 35] Apparatus for storing information provided by a user which comprises:
>
> ***search means***, ***in response to user input***, for ***traversing a data structure*** and for ***providing an indication of a location in the data structure***;
>
> ***info input means***, in response to user input, for receiving and storing information from the user;
>
> ***data means***, in response to user input, for ***designating the information as data while the information is being received***;
>
> ***label means***, in response to user input, for ***designating at least a portion of the information as a label*** ***while the information is being received***;
>
> ***means***, in response to user input, for storing the label at the location in the data structure; and
>
> ***associating means***, in response to user input, for associating the label with the data; and further comprising
>
> [Inherited from Claim 36] ***second label means***, in response to user input, for ***conveying the stored information to the user*** and for ***designating at least a portion of the stored information as the label***; and further comprising
>
> [Additional limitations of Claim 37] ***third label means***, in response to user input:
>
> (a) for causing the info input means to receive and store further information; and
>
> (b) for ***designating the further information as the label*** ***while the further information is being received***.

*See* Exhibit A (emphasis added, to indicate claim terms that comprise "additional features" and "meaningful limitations" and/or to demonstrate areas where eDekka suspects that defendants will raise claim construction issues).

There appears to be no dispute that the claims of the '674 Patent satisfy the threshold patent eligibility issue of being covered by the literal language of 35 U.S.C. §101. *See* the Action Defendants' Motion at 7 (no mention of any argument that the claims of the '674 Patent fail to satisfy this threshold issue). The method claims of the '674 Patent are processes, or new

and useful improvements thereof, and the apparatus claims of the '674 Patent comprise a machine, or a new and useful improvement thereof.  Accordingly, the analysis can proceed directly to the *Alice* framework.  The method and systems of the patent also improve the performance of a computer application because the system can immediately begin to process a user's input (such as a change to the quantity ordered via a shopping cart function) and provide immediate feedback to the user. This immediate processing reduces the time to retrieve labeled information and reduces the amount of information that must be retrieved.

The claims are not directed to an abstract idea because they improve the functioning of technology. *Cal. Inst. of Tech. v. Hughes Communs., Inc*., 59 F. Supp. 3d 974, 984 (C.D. Cal. Nov. 3, 2014) (citing *Alice*, 134 S. Ct. at 2359).  Claims that recite particular methods to improve technology, rather than preexisting business processes, are patent-eligible under section 101. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).  By designating and indexing information as information is received, the '674 patent improves the functioning of a computer because it creates a structure that substantially reduces the time to retrieve information and the amount of information that must be retrieved. (Decl. of Sherwood ¶¶ 10, 11). A computer application using this method and system can send and retrieve only the data corresponding to a particular label, rather than a large block of information.  Such an application can more quickly respond to a user's input. (*Id.*).  The ability to customize labels further improves the performance of a computer by creating a means easily and more quickly access stored information from a database. (Decl. of Sherwood ¶¶ 8, 9).  The '674 patent is distinguishable from recent Supreme Court opinions on section 101 because it is not a known business method or mathematical equation. *See Bilski v. Kappos*, 561 U.S. 593, 599 (2010) (transaction hedging formula); *Mayo*, 132 S.Ct. at 1294 (formula to measure blood metabolites);

*Alice*, 134 S.Ct. at 2352 (intermediated settlements). The '674 patent is not an abstract concept—it is a functional improvement to technology.

It is straightforward from the face of the claims and even a casual reading that the claims involve an application rather than an abstract idea, and that they contain "additional features," "meaningful limitations," and a process more limited than simply "storing information" or "storing and labeling information." *See, e.g., Alice*, 134 S.Ct. at 2357; *Ultramercial,* 722 F.3d at 1343; *Rockstar*, 2014 WL 1998053 at *4. The patent claims show a bounded universe of applications, not an abstraction. *Compare, e.g., Rockstar*, 2014 WL 1998053 at *4. Steps must be performed "in response to user input," there must be portions of information designated as "data" and as a "label," and there must be a "data structure," which must be "traversed," which connotes a physical component. These claims represent specific applications and particular methods/systems to receive, store, label and organize data, not merely a description of the abstract idea of "storing information" or "storing and labeling information."

In addition, the portions of Claims 5, 17 and 37 that are emphasized above show that there are at least seven separate limitations of each claim that provide "additional features" or "meaningful limitations." (Decl. of Sherwood ¶¶ 8, 10). Claimed steps such as "designating the first information as data," "designating the second information as a label," "while the []" information is being received," "traversing a data structure," and "providing an indication of a location in the data structure" clearly articulate a process that is meaningfully limited relative to the abstract idea of "storing information" or "storing and labeling information." *Compare, e.g., Rockstar*, 2014 WL 1998053 at *4; *TQP Development*, Case No. 2:12-cv-180, Slip Op. at 14 (denying motion for summary judgment on Section 101 grounds where the patent claim at issue involved a specific system for modifying data, even though the invention did not result in

physical transformation). These limitations also demonstrate that the "field" of "storing information" or "storing and labeling information" is not preempted by the claims of the '674 Patent, individually or collectively. *Compare, e.g., Ultramercial*, 722 F.3d at 1339 (any inquiry into the scope of preemption – how much of the field is "tied up" by the claim – by definition will involve historic facts: identifying the "field," the available alternatives, and preemptive impact of the claims in that field).

Terms of the '674 patent tie it to a special purpose computer, thereby imposing a meaningful limitation on the scope of the claims. The '674 Patent claims specific methods and systems for storing and labeling information and include substantive limitations that require software applications that, at least, enable information designation without intervention from a user, as well as, identifying information and its location within e.g., a data structure. (Decl. of Sherwood ¶ 6). For example, elements in claim 5 (reproduced below) reads in part:

> . . . [] while the first information is being received
>
> . . . [] while the second information is being received.

These limitations require processing of information without user intervention by a special software application that, separate and apart from the user, designates certain information as data and other information as labels. (*Id*. ¶ 7).

The '674 patent also claims specific methods for providing defined, physical information. For example, elements in claim 5 (reproduced below) reads in part:

> []…. traversing a data structure and providing an indication of a location in the
>
> data structure; …

This element describes a special application beyond conventional storing and labeling in a database. The implementation of this method improves the performance of a computer system

since the time necessary to retrieve at a later time is reduced because data location is already predetermined by the system.  (*Id.*).  Typical computer systems, in contrast, places information in a database, but the information is not necessarily labeled.  Conventional storage structures are typically ordered or unordered without special-purpose labeling as described above. (Decl. of Patterson, Exh. E *Storage Structures*).

The '674 Patent claims specific methods and systems for dynamically handling information at various claim steps.  (Decl. of Sherwood ¶ 8).  For example, claim 5 of the '674 Patent reads in part:

> [] … designating the first information as data while the first information is being received;
>
> [] … designating the second information as a label while the second information is being received; …

These claim elements impose tangible limitations narrowing the claims.  Implementation of this method requires a specialized computer application programmed to run separate and part from a user.  (*Id.*).

The claims also include references to user defined labels.  Claim 5, for example, reads in part:

> … response to user input, designating the second information as a label while the second information is being received; …

Unlike mere storing and labeling information, the '674 Patent describes a method where the entire text is matched with a retrieval request to search and locate the retrieval word.  (*Id.* ¶ 10).

The systems and method accelerate the retrieval process, substantively reducing the amount of information that must be accessed to retrieved labeled information. (*Id.*). Improved and efficient data access and retrieval are necessary when handling large amounts of data, especially in web-based transactions where speed and efficiency have a direct impact on a user's experience.

A computing system with of one or more special-purpose applications must be specifically programmed to perform the methods of the '674 patent.[4]   A general purpose computer programed to perform a specific function becomes a special purpose computer.  *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994).  Thus, the claims are appropriately limited, and do not preempt the abstract concept of "storing and labeling information", because claims terms ties the method to special purpose computer. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed. . .").

In addition, the '674 Patent itself illustrates some of the alternative methods of "storing information" or "storing and labeling information" that the '674 Patent improved upon.  For example, a written list (handwritten or electronic) was a method of "storing information" or "storing and labeling information."   The '674 Patent also gives examples of storing and/or retrieving information that is limited to sequential access, such as in the case of a cassette tape recorder.  *See* Exhibit A, col. 1:19-38.  These examples show that there are alternative methods

---

[4] This requires advanced programming and specialized software, which in the ecommerce context, includes a three-tier client-server architecture.  (Decl. of Patterson Exh. C, Hung & Zou).  The Action Defendants have assembled presentation tier (e.g., web server(s)), logic tier (e.g., application server(s)), and data tier (e.g., database server(s) ) capable of receiving and handling web requests to store, access, and handle information in a data structure as implemented in web-based transactions.  *Id.*  The three tiers are separate software modules that are specifically programmed to perform the functions in each tier to work with information in data structures in a manner conducive to supporting web-based transactions.   (*Id.* Exh. D, Microsoft article on three-tiered database architecture).

and systems such that the '674 Patent does not preempt the field, and also that the '674 Patent contains an "inventive concept," "additional features," and "meaningful limitations" – that is, the claims of the '674 Patent describe specific methods and systems that allow for random access to stored data.

Moreover, indications from the file history (not attached here) show that the "in response to user input" limitation helped set the invention of the '674 Patent apart from certain prior art references (even though the defendants' servers perform the steps of the method and comprise the accused system, they do so "in response to user input").  This further illustrates that the '674 Patent does not preempt the field and that its limitations were considered inventive and meaningful.

The "librarian" example described at page 8 of the Action Defendants' Motion does not show that the claims of the '674 Patent merely reflect an "abstract idea" because they do not tie the librarian's activities to the limitations of the '674 Patent.  For instance, there is no indication in the defendants' example that librarian does anything to "*designate* the book *as data*" or "*designate* the author's name *as a label*," much less that the librarian does so "while the information is being received."  By contrast, as will be demonstrated in the litigation, the defendants' websites and associated systems perform these steps, as eDekka can see from examination and analysis of their publicly available code and operation of their websites.

Further, the "librarian" argument is premised on the Action Defendants' interpretation of the claim term "label."  In the computer science field, "label" refers to a sequence of characters that identifies the location within source code.  The Action Defendants' interpret "label" to hold its more general meaning, being a descriptive word or phrase.  This difference in claim interpretation significantly changes the breadth of the '674 Patent's claims from an abstract

method used in libraries, to a much more limited computer database management solution. A "user defined label" is further limited because it can be used for later information retrieval. (Decl. of Sherwood ¶¶ 10, 11). To illustrate this limitation, someone could engineer around the patent by creating a computer program that matches a word in the text to a retrieval request to identify a large body of text, and avoid infringing the '674 patent because the program does not a "user defined label." (*See id.* ¶ 10). Defendants' assumption demonstrates the necessity of claim construction because Defendants' invalidity argument is premised on its interpretation of the term "label." *See Certified Measurement*, 2015 U.S. Dist. LEXIS 39821, at *4 ("The need for claim construction is especially apparent here, where Defendants' invalidity argument is implicitly premised on its conclusions about the meanings of certain claim terms.") (Payne, J.).

**E. In the Alternative, the Section 101 Motions to Dismiss Should Be Denied Because There are Fact Issues and Claim Construction Issues that Defeat the Motions.**

Defendants have not satisfied their burden to show the absence of fact issues and claim construction issues such that the only plausible reading of the '674 Patent is that there is clear and convincing evidence of invalidity on the grounds of subject matter ineligibility. *See Ultramercial*, 722 F.3d at 1339; *Rockstar*, 2014 WL 1998053 at *3 ("If there are factual disputes about the patent's claims, however, the question of patentable subject matter should be reserved until claim construction."). To the contrary, there are a multitude of fact issues and likely claim construction issues present here that defeat the Section 101 Motions to Dismiss.

Some of the fact issues have been described above. There are certainly fact issues as to relevant factors in the Section 101 analysis, such as the extent of preemption within the field,

- 17 -

and the available alternatives.  eDekka anticipates that further discovery and expert testimony on both infringement and invalidity will draw these facts out further.

Defendants will no doubt argue non-infringement on the grounds that their websites and systems do not meet certain limitations of the asserted claims.  The presence of noninfringement arguments demonstrates that there are fact issues with respect to the breadth of the claims and to what extent, if any, they preempt the field, and to what extent, if at all, they foreclose available alternatives.  Remember, on a Rule 12(b)(6) motion such as these Section 101 Motions to Dismiss, dismissal is appropriate only if the well-pleaded allegations of the complaint, *construed in the light most favorable to the plaintiff*, establish that dismissal is appropriate. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  In this respect, at the moment for purposes of these pending motions only, the light most favorable to eDekka would be the reading that gives rise to the narrowest scope of preemption and the fewest available alternatives.

Likewise, with respect to claim construction, at the moment for purposes of these pending motions only, the claim construction most favorable to eDekka would be the narrowest plausible constructions.  eDekka anticipates that the narrowest plausible constructions would be those proposed by the defendants in their P.R. 4-2 and 4-3 disclosures, and in their responsive claim construction brief.  Generally, these are the constructions that defendants propose to avoid infringement.  Defendants have chastised eDekka for not providing proposed constructions, but that criticism is entirely misdirected—it is the *defendants* who have the burden of coming forward with proposed constructions to show the absence of issues and invalidity by clear and convincing evidence.

- 18 -

With respect to the scope of preemption and available alternatives, eDekka notes that it has not accused all e-commerce websites with shopping cart functionality.   For example, eDekka has not accused shopping carts with no user input options.   These are carts where a user just selects an item and adds it to a cart, but cannot input data such as number of items, color, etc.   Also, eDekka has not accused shopping carts that are for the sale of unique items such as used goods, because on these sites the user cannot input data such that all claim limitations are triggered.   The claims cannot preempt the field because there are a variety of ways to engineer around the '674 Patent.   Again, this further demonstrates the presence of fact issues that defeat the Section 101 Motions to Dismiss.   eDekka further notes that it has, of course, specifically examined the publicly-available portions of code and the publicly-viewable activity of each website and shopping cart that it has actually accused, and is prepared to serve its infringement contentions showing how those sites meet the limitations of the asserted claims of the '674 Patent.

## **CONCLUSION**

For the reasons set forth in this motion, eDekka respectfully requests that the Court deny the Section 101 Motions to Dismiss.

Dated: July 9, 2015                    Respectfully submitted,

                                       By: */s/ Austin Hansley*
                                       **AUSTIN HANSLEY P.L.L.C.**
                                       Austin Hansley
                                       Texas Bar No.: 24073081
                                       Brandon LaPray
                                       Texas Bar No.: 24087888
                                       5050 Quorum Dr. Suite 700
                                       Dallas, Texas 75254
                                       Telephone:     (469) 587-9776
                                       Facsimile:     (855) 347-6329
                                       Email: Austin@TheTexasLawOffice.com
                                       Email: Brandon@TheTexasLawOffice.com
                                       www.TheTexasLawOffice.com
                                       **ATTORNEYS FOR PLAINTIFF**
                                       **EDEKKA LLC**


## CERTIFICATE OF SERVICE

        I hereby certify that on July 9, 2015, I electronically filed the foregoing document with
the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division,
using the electronic case filing system of the court. The electronic case filing system sent a
"Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept
this Notice as service of this document by electronic means.

                                       */s/ Austin Hansley*
                                       Austin Hansley