**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **EDEKKA LLC,**            Plaintiff,    v.    **3BALLS.COM, INC.,**            Defendant. | **CIVIL ACTION NO. 2:15-cv-541-JRG**    **CONSOLIDATED CASE**    **JURY TRIAL DEMANDED** |
| **EDEKKA LLC,**            Plaintiff,    v.    **E REVOLUTION VENTURES, INC.,**            Defendant. | **CIVIL ACTION NO. 2:15-cv-585-JRG**    **CONSOLIDATED CASE**    **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Law on Attorney's fees under section 285 .................................................................................. 1

Argument ....................................................................................................................................... 2

   A. eDekka had a reasonable basis to bring suit. ......................................................................... 3

      1. The '674 patent specification provides specific embodiments that directly support each of eDekka's infringement allegations. ..................................................................................... 3

      2. It is objectively reasonable to believe the '674 patent is valid. ........................................... 4

   B. eDekka litigated in a reasonable manner. ................................................................................ 8

      1. eDekka invested substantial resources into the cases ........................................................... 8

      2. Filing many small cases is not evidence of bad faith ............................................................ 9

      3. eDekka settled its cases for reasonable amounts and did not coerce the defendants. ........ 10

   C. There is no litigation misconduct. ......................................................................................... 13

Misjoinder of Water Filters Direct, LLC ..................................................................................... 15

Conclusion ................................................................................................................................... 15

Plaintiff eDekka LLC files this Response to the joint motion for attorney's fees filed by Action Envelope & Printing Co., Inc. and a group of other defendants.[1] Nothing about this case is exceptional. eDekka had a good faith belief that the '674 patent was infringed, valid, and it litigated in a professional manner. eDekka's infringement theory has support from the specification, and its decision to sue numerous defendants was reasonable given that infringement was widespread and that the patent-in-suit was approaching its expiration date. eDekka settled its cases for amounts proportionate to its valuation for a patent license. There is no reason to depart from the standard rule that each party pays its own attorney's fees.

Action Envelope advances a logically inconsistent position and ignores issue-determinative authority on § 285. Every time eDekka defends its position, Action Envelope demands fees for spending extra money; but, every time eDekka attempts to keep costs low, Action Envelope accuses eDekka of admitting its claims lack merit. This double standard is impossible to meet. Action Envelope's basis for fees is merely attorney conjecture. District courts have consistently held that neither losing a case on invalidity grounds nor filing numerous cases are grounds for awarding attorney's fees under § 285. Therefore, eDekka requests the Court deny Action Envelope's motion to find the case exceptional.

## LAW ON ATTORNEY'S FEES UNDER SECTION 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional" case is one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and

---

[1] A list of defendants who joined the motion is in the Defendant's combined motion at note 1. (2:15-cv-541, Dtk. 105). Defendant Luxury Brand Holdings, Inc. has withdrawn its joinder of the motion. (2:15-cv-585, Dkt. 146). Defendant Cole Haan LLC filed a separate notice of joinder rather than participate in the defendants' consolidated brief. (2:15-cv-541, Dkt. 107). For simplicity, Action Envelope and the joining defendants, other than Luxury Brand Holdings, Inc. and Cole Haan LLC, shall be referred to herein as "Action Envelope."

the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Awards of attorneys' fees should be reserved for rare and unusual circumstances. *Stragent, LLC v. Intel Corp.*, 2014 U.S. Dist. LEXIS 169080, at * 10 (E.D. Tex. Aug. 6, 2014) (Dyk, J.).

The focus of a fees inquiry is whether the arguments were frivolous or made in bad faith. *Id.* at *12. A case is not exceptional when a plaintiff has a reasonable hope of succeeding on the merits. *Dietgoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 2015 U.S. Dist. LEXIS 34782, at *16 (E.D. Tex. Mar. 20, 2015) (Bryson, J.). "For a case dismissed before trial to be exceptional, evidence of the frivolity of the claims must be reasonably clear . . ." *SFA Systems, LLC v. 1-800 Flowers.com, Inc.*, 2014 U.S. Dist. LEXIS 184311, at *8–9 (E.D. Tex. Aug. 7, 2014). A frivolous case has "little or no weight, value, or importance . . . having no reasonable ground or purpose." *Deutsch v. United States*, 67 F.3d 1080, 1085-86 (3rd Cir. 1995). A weak case is not exceptional. *Charge Lion LLC v. Linear Tech. Corp.*, 2014 U.S. Dist. LEXIS 184576, at *7 (E.D. Tex. Aug. 25, 2014).

## ARGUMENT

This is not an exceptional case. Action Envelope's brief boils down to two arguments: (1) it is objectively unreasonable to think the '674 patent is valid, and (2) filing and settling many small patent cases is objectively unreasonable. eDekka had a reasonable basis in law and fact to bring suit and believe its claims are valid. eDekka's infringement theory is supported by the specification and its claims had a reasonable likelihood of success—they are certainly not frivolous. eDekka's licensing demands were justified based on its valuation for a patent license, and eDekka was justified in bringing many suits, because infringement was widespread and it faced a limited damages period. Further, eDekka litigated in a fair and ethical manner.

**A. eDekka had a reasonable basis to bring suit.**

1. The '674 patent specification provides specific embodiments that directly support each of eDekka's infringement allegations.

eDekka's infringement positions are supported by the '674 Patent specification. Action Envelope mischaracterizes the '674 Patent as a cassette recorder patent and unjustly asserts that eDekka's infringement position is a far stretch from the '674 Patent specification.[2]

Regarding eDekka's shopping-cart infringement contentions, shopping carts itemize and organize merchandise in inventory according to user preferences, the merchandise including particular features (e.g., quantity, color, and size). *See* Exh. B, Infringement Contentions. The '674 Patent describes specific embodiments in which the labels are used to organize inventory data, particularly to provide a "layout of the merchandise in [a] business" and may be applied to "a business which may wish to enter inventory data according to department or aisles." '674 Patent cl. 16:45-58. eDekka's infringement contentions are directed to using labels to provide a particular layout of merchandise available through Defendants' shopping carts, the layout of merchandise arranged according to user selections. Despite Action Envelope's arguments to the contrary, the '674 Patent specification describes and supports eDekka's infringement contentions on the implicated shopping carts.

Action Envelope attempts to argue that distributed or online implementations are a far stretch from the specification, but they again ignore the teachings from the specification. The '674 Patent describes a distributed computing architecture in which information is entered in one location and then transmitted, stored, and accessed in a remote location. '674 Patent cl. 16:27-

---

[2] Notably, none of the Action Envelope defendants asserted that eDekka's infringement contentions were insufficient, nor requested a meet-and-confer to correct any alleged deficiencies. LaPray Decl. ¶ 2.

45. The information may be entered "off-line," then transferred through a data transfer mechanism such as a data link, and the CPU may receive and store the transferred data, to provide the user with remote access to the downloaded data. '674 Patent cl. 16:27-45. Hence, eDekka's infringement contentions on distributed or online implementations are also described and supported by the '674 Patent specification, and are not a far stretch as Defendants contend.

Furthermore, the '674 Patent specification supports eDekka's infringement contentions that include screenshots of interactive interfaces that enable user input. For example, the specification discloses that a user may enter information through an interactive LCD display (or other peripheral device) through the use of icons. *Id*. cl. 17:45-49. Moreover, such information is not limited to speech, but may be in the form of text, *id*. cl. 2:25-33, and such text information may be entered through the use of keys. *Id*. cl. 3:28-33. Action Envelope mischaracterizes eDekka's infringement contentions as being unreasonable, but the '674 Patent specification supports eDekka's infringement theory with specific embodiments.[3]

2. It is objectively reasonable to believe the '674 patent is valid.

Considering a variety of legal and factual sources, eDekka has a reasonable basis to believe the '674 patent is valid. Action Envelope cannot meet its burden to show eDekka's validity arguments were frivolous. Under the patent code, all properly issued patents are presumed valid. 35 U.S.C. § 282. Each claim is presumed valid independently of the other claims. *Id*. The '674 patent was thoroughly vetted by the USPTO. eDekka is entitled to rely on the legal presumption of validity and that the USTPO performed its job correctly.

---

[3] *See Trover Grp., Inc. v. Dedicated Micros USA*, 2015 U.S. Dist. LEXIS 107733, at *15 (E.D. Tex. Aug. 17, 2015) (even claim interpretations that stretch the bounds of plausibility are not independent grounds for finding a case exceptional).

To the best of eDekka's knowledge, Action Envelope never submitted or disclosed a single § 102 or § 103 prior art reference to eDekka or even raised an argument that the claims are invalid under any of § 102, § 103, or indefinite under § 112. Action Envelope's sole defense was based on § 101, but eDekka has a reasonable basis to believe the '674 patent is valid under § 101.

eDekka has a reasonable basis to believe the '674 Patent's means-plus-function claims are not abstract and are valid under §101. According to §112 P 6, claims reciting "means for" are presumed to be means-plus-function claims, and the claims "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." Each and every example of a supporting structure in the '674 patent specification is tied to a computer.[4] By the statutory mandate of §112 P 6, these means-plus-function claims are tied to the computer structures and equivalents disclosed in the '674 patent specification. Action Envelope cannot toss aside means-plus-function claim limitations under a § 101 challenge, when § 112 P 6 mandates that the above claim construction exercise be performed.

*See In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (where the PTO construed "means for" as broadly covering each and every means for performing the functions and subsequently made a § 101 determination of patent ineligibility, the Federal Circuit reversed and held that "<u>the PTO is not exempt</u> from following the statutory mandate of § 112 P 6, . . . [and] therefore erred as a matter of law in refusing to apply § 112 P 6 in rendering its § 101 patent subject matter determination."); s*ee also Chicago Mercantile Exchange, Inc. v. 5th Market, Inc.*, CBM2015-00061, pp. 35-37 (PTAB denied institution of claim based on § 101 where petitioner failed to

---

[4] In its 24 column disclosure, the '674 Patent discloses numerous computer-based structures such as a central processing unit, digital signal processor 10, analog-to-digital converter 30, digital-to-analog converter 40, keypad 50, clock 60, memory 20, single in-line memory module (SIMM), dynamic random access memories (DRAMs), DRAM controller, and table of data modules depicting memory addresses.

5

address "means for matching" limitation, because it is a means-plus-function limitation that included "a specific algorithm that transforms an otherwise general purpose computer into a special purpose computer" to perform the function of "matching").[5]

Under a proper §112 P 6 analysis that ties the means-plus-function claims to structure disclosed in the specification, the means-plus-function claims pass the machine-transformation test, because they are tied to the particular computer structures disclosed in the specification. Action Envelope's sole argument that such claims are abstract under § 101 is that the claims are tied to a general purpose computer, and not to a special purpose computer.

To this end, eDekka provided citations to figures and portions in the specification disclosing support for the structure and algorithms that would support a finding that the claims (both system and method) require a special-purpose computer (*See, e.g.*, Fig. 1; Fig. 4; cl. 3:55-cl. 4:12; cl. 11:19-35; cl. 11:59, cl. 12:54).

Further, eDekka submitted two expert declarations, both supporting a finding of validity.[6] Two independent software experts having at least ordinary skill in the art believe the '674 Patent to require special-purpose hardware and software structures. These experts also agree that the '674 Patent improves the functioning of a computer by teaching programmers a more efficient way to store and retrieve data.[7] It is reasonable for eDekka to rely on the opinions of independent software experts to form an opinion that the patent was valid. "A court should not find that a claim is objectively baseless when there are experts in the scientific field before the

---

[5] Attached as Exh. A.

[6] Action Envelope never moved to strike the declarations or submitted anything challenging the experts as inappropriate, not qualified, or had unsupportable opinions, as is indicated in the docket sheet for both cases.

[7] The Court held that eDekka's declarations were extremely conclusory and provide little support (2:15-cv-541 Dkt. No. 100). eDekka respectfully disagrees and submits that, without limitation, at least paragraphs 5,6,7,8,9,10 from Barnett's declaration (Barnett Decl. *Id*. Dkt. No. 94) and paragraphs 6,7,8,9,10 are not conclusory and do provide support (Sherwood Decl., *Id*. Dkt. No. 32).

court that disagree on the language and scope of the patent." *Ushijima v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 109031, at *5 (W.D. Tex. July 30, 2015) (denying attorney's fees).

Further, patents similar eDekka's survived § 101 challenges post-*Alice*. In *Execware*, the patent-in-suit claimed a method for organizing databases with text data objects.[8] Using an object to identify the location of particular data is similar to using a user-defined label. And there is nothing exceptional about a patent being invalidated on 101 grounds before a *Markman* hearing. The defendants' briefing concedes that courts routinely invalidate patents on § 101 grounds before claims construction.[9] The defendants contradict themselves by now arguing that this case stands out from all others when they previously argued that this exact result regularly occurs.

Notwithstanding the above, § 101 jurisprudence makes it difficult to predict with certainty that a patent is clearly valid or invalid.  The jurisprudence is murky and a currently-evolving area of patent law, such that invalidity is not readily apparent from a pre-suit investigation.  *Digitech Image Techs., LLC v. Newegg, Inc*., 2013 U.S. Dist. LEXIS 147633, at *8 (C.D. Cal. Oct. 11, 2013) (denying motion for fees after resolving numerous cases on § 101 grounds).  Current § 101 analysis seems to rest heavily on how broadly a defendant can generalize a claim into an idea, and what constitutes a limiting feature.  Many patent law practitioners find it difficult to draw the line on what is an abstract idea and what provides a sufficient inventive concept.

And to clear the record, Action Envelope argued that eDekka conceded the '674 patent is invalid at oral argument and the Court held that "eDekka acknowledge[d] that the claim language

---

[8] *Execware, LLC v. BJ's Wholesale Club, Inc.*, 2015 U.S. Dist. LEXIS 92127, at *3-6 (D. Del. July 15, 2015), report and recommendation adopted in part and rejected in part by *Execware, LLC v. BJ's Wholesale Club, Inc*., 2015 U.S. Dist. LEXIS 132387 (D. Del. Sept. 30, 2015).
[9] *See* Forever 21, Inc.'s Motion, 2:15-cv-589, Dkt. No. 8, p. 4 ("District courts around the country, including this Court, have routinely granted Rule 12(b)(6) motions on § 101 grounds without engaging in formal claim construction.").  Forever 21, Inc. cites 10 cases supporting this proposition.

does not expressly require a computer." (2:15-cv-541, Dkt. No. 100). To correct the record, eDekka respectfully notes that it stated that the '674 claims "do not expressly *state* a computer" [Tr. p. 16, ln. 23-24] (emphasis added). To be clear, eDekka never conceded the claims "don't expressly *require* a computer." *Id* (emphasis added). Lacking the requirement of a computer is a claim construction position—determined without a claim construction hearing—that eDekka disagrees with and argued to the contrary. eDekka argued a person skilled in the art, reviewing the claims in light of the specification, would understand the claims to require a computer. As supporting description and structure for the claims (including means-plus-function claims), the '674 Patent in its 24-column specification discloses numerous computer-based structures.[10] *Supra* note 4. As an example, the specification states that the processes of the claimed invention are performed by software stored in memory that is executed on a CPU. *Id*. 4:39-44; *see also id*. 16:27-45 (disclosing distributed architecture embodiment). Thus, reading the claims in light of the specification, it is reasonable to construe that the claims require a computer and eDekka never conceded anything to the contrary.

**B. eDekka litigated in a reasonable manner.**

1. eDekka invested substantial resources into the cases.

eDekka was fully prepared to litigate on the merits. eDekka never attempted to avoid a substantive decision. eDekka raised a substantial defense to the Defendant's invalidity challenges, retaining two software experts and submitting dozens of pages of responsive briefing. Although the Court invalidated the patent, simply losing a case is not grounds for finding an exceptional case. *Chipotle Mexican Grill*, 2015 U.S. Dist. LEXIS 34782, at *8.

---

[10] The '674 specification references CPU 78 times, each figures contains at least one computer element, and the USPTO examiner during prosecution used IEEE definitions to define common terms in all independent claims. *See* Exh. E.

eDekka's substantial investment into the case shows it has not acted in bad faith. *Trover Grp.*, 2015 U.S. Dist. LEXIS 107733, at *29 (Bryson, J.). The moving defendants' own exhibits show that eDekka produced more than 1,000 pages of infringement contention documents for the parties who joined the fees motion, each contention carefully examining the source code of each webpage to demonstrate infringement. (Dkt. Nos. 114, 115, 122, 136, 137).

2. Filing many small cases is not evidence of bad faith.

It is reasonable to bring many small cases when infringement is widespread. Because patent infringement is often widespread, filing many cases is not sufficient to find an exceptional case under § 285.[11] eDekka's window of time to bring suit was nearing an end and waiting to file lawsuits greatly diminishes the available damages and risks the industry moving away from or adopting non-infringing alternatives.

Notably, filing many cases makes it easier on defendants because it reduces the cost to defend. Defendants can pool resources, share the cost of briefing, and are typically in a stronger negotiating position due to cost savings. If eDekka truly wanted to be coercive, it would sue a small number of defendants in different courts, forcing each to bear the full cost of litigation.

Other district courts that routinely hear many patent cases agree that filing many small cases is reasonable. The District of Virginia heard very similar facts and did not find the case exceptional. *DietGoal Innovations, LLC v. Wegmans Food Mkts., Inc.*, 2015 U.S. Dist. LEXIS 111867, at *14 (E.D. Va. Aug. 21, 2015). There, the plaintiff was a non-practicing entity that filed 70 cases in different courts. *Id.* at *13. Another court invalidated the patent-in-suit on § 101 grounds. *Id.* at *4. The District of Virginia denied defendants motion for attorney's fees, quoting Judge Bryson, who stated "[i]f a party can reasonably hope for success on the merits of its claim,

---

[11] *SFA Sys. V. 1-800-Flowers.com, Inc.*, 2014 U.S. Dist. LEXIS 184311, at *8 (E.D. Tex. July 7, 2014), affirmed in *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1347 (Fed. Cir. 2015).

it does not matter whether that party is a non-practicing entity, whether it sues numerous defendants, or whether it settles its claims for relatively small sums." *Id.* at * 14.

The Central District of California reached the same conclusion under similar facts. The plaintiff filed many lawsuits and its patent was invalidated on § 101 grounds. The court denied the defendant's fees motion, concluding that filing many lawsuits and having a patent invalidated under § 101 does not prove a case is exceptional. *Digitech Image Techs., LLC v. Newegg, Inc.*, 2013 U.S. Dist. LEXIS 147633, at *12 (C.D. Cal. Oct. 11, 2013). Importantly, the court noted that "[a] party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants." *Id.* at * 12.

The Northern District of California found there was "not a reasonable possibility that [a] case was exceptional" when the defendant brought 300 lawsuits and licensed the patent to many different companies. *Geotag, Inc. v. Zoosk, Inc.*, 2014 U.S. Dist. LEXIS 24782, at *10-11 (N.D. Cal. Feb. 26, 2014). The court emphatically concluded these facts fail to prove even a "reasonable possibility" of malfeasance. *Id*. at *12.

3. eDekka settled its cases for reasonable amounts and did not coerce the defendants.

eDekka's settlement numbers do not represent bad faith or an attempt to coerce defendants. Action Envelope's argues that suing for small amounts is evidence of bad faith, but this argument was rejected by Judge Bryson sitting by designation in this Court. There, the Court held that it does not matter if a case is settled for a small value, or even nuisance value, rather the key inquiry is whether the plaintiff had a reasonable chance of success on the merits. *Dietgoal*, 2015 U.S. Dist. LEXIS 34782, at *16.

Instead of nuisance value, eDekka's settlement numbers reflect eDekka's view of the value to a license to the '674 Patent. In eDekka's view, the persistent shopping cart is one of the

10

more important features of the ecommerce platform, because it is the feature necessary to actually implement a purchase and improve customer interaction with the website.

Industry reports indicate that for online retailers, enterprise-level ecommerce platforms on average cost $200,000 to $300,000 per year in overhead and upgrades.[12] Over six years, the total cost may be $1,200,000 to $1,800,000. Ecommerce platforms typically include many features, of which a shopping cart is one feature. [13] eDekka views the accused instrumentality to be a particular feature of a shopping cart (e.g., enabling selection of particular features such as color, size, etc., of an inventory item); therefore, the value of a patent license for ecommerce retailers would be a small percentage of $1,200,000 to $1,800,000, corresponding to a feature of a feature of an ecommerce platform. Hence, eDekka's settlement numbers for online retailers are reasonable under eDekka's view of the value to a license to the '674 Patent.[14]

For ecommerce vendor licenses, on the other hand, eDekka valued these settlements much higher than individual retailers, because vendors earn revenue from the sale of shopping cart features, and licenses to vendors would exhaust potentially numerous online retailers. eDekka would offer licenses to these entities at values that were multiples of a single settlement value in order to start negotiations.

eDekka's settlements are in good faith because the settlement values reflect eDekka's value of a patent license—a particular value for individual online retailers and a much higher value for ecommerce vendors. *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed.

---

[12] "Retailers on average spend $212,000 annually on such overhead and $92,000 per year on platform upgrades … according to a November 2012 Forrester Research Inc. report commissioned by Demandware." Exh. C.

[13] For example, Magento's ecommerce platform, in addition to a "persistent shopping cart," offers many other ecommerce features to its customers. *See* Exh. D.

[14] For example, assuming that the accused instrumentality was 5% of the value of the ecommerce platform, the potential value of license would be $60,000 to $90,000. Settlement negotiations could then start at a discount of that amount.

Cir. 2015) ("[T]hose larger settlements imply that SFA does not always seek nuisance value settlements for amounts far less than the cost of litigation as Newegg asserts. Accordingly, the district court's unwillingness to read bad faith motivations into SFA's settlement amounts, without more evidence about what prompted those settlements, was neither clearly erroneous nor an abuse of discretion.").

Action Envelope contends that eDekka made nuisance value settlements prior to the § 101 hearing in an attempt to avoid the hearing.  Action Envelope mischaracterizes the facts.  eDekka offered a group settlement to defendants that joined the joint defense group, the settlement reflecting a group discount.  eDekka's lower settlements reflect the uncertainty pertaining to the outcome of a substantive motion, much like the vast majority of cases that settle on the eve of trial.  eDekka did not an attempt to avoid a substantive hearing.  To illustrate, Action Envelope rejected the group-settlement offer and instead suggested a group walk away which would entirely moot the § 101 hearing.  It incentivized the walk-away as an opportunity for eDekka "to live to fight another day." LaPray Decl. ¶ 4.  eDekka rejected both the walk away and the possibility to moot the § 101 hearing.  By rejecting a walk away that would in effect avert the § 101 hearing, this demonstrates eDekka never attempted to avoid a substantive decision.

Action Envelope also contends eDekka made settlement demands aimed at exploiting the cost of defense.  eDekka never used the cost of defense as a justification for seeking settlements.  To the contrary, according to defendants who had discussed their case with Fish & Richardson P.C., the firm offered steep discounts to gather as large of a defense group as possible.

x

According to multiple defendants, the firm offered to defend the lawsuits for just $5,000.[15] *See* LaPray Decl. ¶ 3. With such a low cost of defense, it is impossible to coerce defendants to settle based on the cost of litigation. This proves settlements were based on the merits rather than threats regarding the cost of defense, because the vast majority of settlements were much more than the $5,000 price to join the Fish & Richardson joint defense group. *Id*.

eDekka did not coerce the defendants. In fact, the opposite is true. Defendants used the extraordinarily low cost of defense to negotiate lower settlement amounts. Further disproving Action Envelope's coercion theory, the cost of litigation was disproportionately born by the Plaintiff. eDekka produced thousands of pages of disclosures and retained two expert witnesses. The defendants have not produced their invalidity contentions and have not retained any experts. eDekka could not have used the cost of litigation as a sword when it appears to have paid most of the costs associated with this litigation.

Action Envelope's argument that small value cases are nuisance value would contravene public policy. This would create an impediment for settlement and would make it impossible to bring small cases. Patentees whose patents are infringed by many small companies would always fail Action Envelope's test. Patentees are entitled to their day in court regardless of the size of the case, even if the damages are below the cost of a full patent trial.

**C. There is no litigation misconduct.**

Awards of attorney's fees based on misconduct are granted upon a showing of unethical or unprofessional conduct. Fees have been awarded for destroying evidence, misrepresenting the

---

[15] eDekka served Fish and Richardson P.C. with discovery to confirm oral reports that the firm offered to defend parties for around $5,000. To date, Fish & Richardson P.C. has not responded to these discovery requests. By refusing to disclose the cost to defend, the Fish & Richardson P.C. group of defendants fail to meet their burden prove this case exceptional.

law and the trial courts construction, and misrepresenting the date of key evidence and using motions to hide evidence. *See SFA Systems*, 793 F.3d 1344, 1350 (Fed. Cir. 2015).

Here, there is no misconduct. eDekka has not caused any undue delay or acted contrary to the rules. In fact, eDekka has attempted to decrease the cost of the litigation.[16] The parties to the litigation were cooperative throughout the process, which minimized disputes and resolved collateral issues without court involvement. Cooperative behavior is an indication that there was no litigation misconduct and weighs against awarding fees. *Stragent*, 2014 U.S. Dist. LEXIS 169080, at *18.

Action Envelope contends that eDekka committed misconduct by hiring experts to "drive up costs." (Def.'s Mtn. p. 10-11). This argument is nonsensical, because eDekka retained experts to defend against Action Envelope's invalidity motion, and all additional costs were born solely by eDekka. None of the defendant's hired an expert to rebut eDekka's experts. Moreover, this Court held that raising a strong defense is not grounds for awarding attorney's fees under § 285.[17]

And, Action Envelope's reliance on *MarcTec* is misguided. There an expert failing the *Daubert* test formed the basis for an expert fees award, not attorney's fees under § 285. *MacTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012). The reasoning in *MarcTec* does

---

[16] A former defendant, Balsam Hill requested that all deadlines, including discovery deadlines, be stayed until after the § 101 issue was resolved. eDekka refrained from sending discovery requests, even though not required by the Court. eDekka also filed applications for extensions of time to answer on behalf of defendants to save those defendants expenses.
[17] *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, 2015 U.S. Dist. LEXIS 105404, at *5 (E.D. Tex. Aug. 11, 2015) (Gilstrap, J.) (zealous representation of client is not exceptional).

not apply here because eDekka's expert declarations did not fail the *Daubert* test, nor were the qualification of eDekka's experts ever an issue.[18]

eDekka has conducted itself professionally throughout the litigation. Action Envelope has not met its burden to prove that it is entitled to attorney's fees on the basis of litigation misconduct. Therefore, eDekka requests that the motion for attorney's fees be denied.

## <u>MISJOINDER OF WATER FILTERS DIRECT, LLC</u>

Defendant Water Filters Direct, LLC cannot join the motion for attorney's fees because it is not a prevailing party. The Court found that the prevailing parties in both consolidated actions are "all defendants who have not settled or been dismissed as of this date and who filed or joined a motion to find the patent-in-suit ineligible for protection under 35 U.S.C. § 101 as of [September 21, 2015]." (2:15-cv-541, Dkt. No. 100). To be a prevailing party, one must obtain a court ordered change in the legal relationship of the parties. *See Buckhammon Bd. & Care Home v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 605 (2001). Under the Court's Order and the legal test, Water Filters is not a prevailing party. Water Filters has not filed a motion to dismiss under § 101, nor has it joined a motion to dismiss under § 101 filed by another defendant; therefore, it does not meet the conditions in the Court's Order. It has not obtained any court-ordered relief because it has never requested any relief from this court. It did not even file a counterclaim for invalidity, as alleged. (2:15-cv-585, Dkt No. 46). Thus, eDekka requests that the Court exclude Water Filters from any award of fees under § 285.

## <u>CONCLUSION</u>

eDekka requests the Court find that this case is not exceptional, deny the motion for attorney's fees, and exclude Water Filters from any award of fees under § 285.

---

[18] Both of eDekka's experts are highly qualified. The CV's of both experts are attached to eDekka's § 101 briefing.

Dated: October 23, 2015                    Respectfully submitted,

                                                              By: */s/ Austin Hansley*
                                                              **AUSTIN HANSLEY P.L.L.C.**
                                                              Austin Hansley
                                                              Texas Bar No.: 24073081
                                                              Brandon LaPray
                                                              Texas Bar No.: 24087888
                                                              Benton Patterson
                                                              Texas Bar No.: 24095088
                                                             5050 Quorum Dr., Suite 700
                                                             Dallas, Texas 75254
                                                             Telephone:     (469) 587-9776
                                                             Facsimile:      (855) 347-6329
                                                             Email: Austin@TheTexasLawOffice.com
                                                             www.TheTexasLawOffice.com
                                                             **ATTORNEYS FOR PLAINTIFF**
                                                             **EDEKKA LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                             /s/ *Austin Hansley*
                                                             Austin Hansley